Michael B. Carlinsky
Scott C. Shelley
Samantha Gillespie
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
Email:  michaelcarlinksy@quinnemanuel.com
Email:  scottshelley@quinnemanuel.com
Email:  samanthagillespie@quinnemanuel.com

Eric D. Winston (*pro hac vice* pending)
QUINN EMANUEL URQUHART &
SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100
Email:  ericwinston@quinnemanuel.com

*Attorneys for the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re: | Chapter 15 |
| Oceanair Linhas Aéreas S/A, | Case No. 18-_____ |
| Debtor in a Foreign Proceeding. | |

---

**VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN
PROCEEDING AND MOTION FOR ORDER GRANTING RELATED RELIEF
PURSUANT TO BANKRUPTCY CODE SECTIONS 1515, 1517, 1520 AND 1521**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................2

JURISDICTION AND VENUE ..................................................................................3

BACKGROUND ........................................................................................................4

I.      Overview ...........................................................................................................4

II.     The Brazilian Insolvency Proceeding ...........................................................4

III.    The Foreign Representative ...........................................................................5

IV.    Oceanair .........................................................................................................5

        A.     Corporate Structure ...........................................................................5

        B.     Economic Background ........................................................................6

        C.     Operations and Assets ........................................................................7

        D.     Employees ..........................................................................................9

        E.     Revenue .............................................................................................9

        F.     Property Located in the United States ...............................................9

        G.    Capital Structure ..............................................................................12

V.      United States Proceedings .............................................................................12

RELIEF REQUESTED ...............................................................................................13

BASIS FOR RELIEF .................................................................................................14

I.      The Brazilian Insolvency Proceeding Should be Recognized As A Foreign Main
      Proceeding .......................................................................................................15

        A.     The Brazilian Insolvency Proceeding is a Foreign Main Proceeding ...................15

        B.     Alternatively, the Brazilian Insolvency Proceeding is a Foreign Nonmain
              Proceeding ........................................................................................19

        C.     The Petitioner is a Foreign Representative Who Is a Person ...............19

        D.     The Verified Petition Meets the Requirements of Section 1515 ...........20

II.     Oceanair Is Entitled To Automatic Relief Under Section 1520 .......................23

III.    Discretionary Relief Under Section 1521 Should Also Be Granted ................23

        A.     Likelihood of Success on the Merits .................................................25

        B.     Likelihood of Irreparable Injury If Injunction Not Granted ...............25

        C.     Threatened Injury to Oceanair Outweighs Any Damage to Third Parties .............26

        D.     Injunction Will Serve Public Interest ...............................................26

i

E.    Granting Relief Is Proper as Interests of Creditors and Other Interested
      Parties are Sufficiently Protected..........................................................................26

F.    No Waiver of Foreign Representative's Immunity................................................27

PRAYER FOR RELIEF ................................................................................................................27

## TABLE OF AUTHORITIES

**Page**

### Cases

*In re ABC Learning Ctrs. Ltd.*,
  445 B.R. 318 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301(3d Cir. 2013)................................. 16

*In re Ashapura Minechem Ltd.*,
  480 B.R. 129 (S.D.N.Y. 2012)........................................................................................... 21

*In re Banco Santos, S.A.*,
  No. 10-47543 (Bankr. S.D. Fla. Jan. 13, 2011) ............................................................... 22

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
  374 B.R. 122 (Bankr. S.D.N.Y. 2007)............................................................................... 18

*In re Betcorp Ltd.*,
  400 B.R. 266 (Bankr. D. Nev. 2009) ................................................................................ 16

*In re British Am. Ins. Co.*,
  425 B.R. 884 (Bankr. S.D. Fla. 2010)............................................................................... 16

*In re British Am. Isle of Venice (BVI), Ltd.*,
  441 B.R. 713 (Bankr. S.D. Fla. 2010)........................................................................... 16, 21

*In re Compania Mexicana de Aviacion, S.A. de C.V.*,
  2010 WL 10063842 (S.D.N.Y. Nov. 8, 2010) .................................................................. 20

*In re Crystallex Int'l Corp.*,
  No. 11-14074 (Bankr. D. Del. Dec. 28, 2011) ................................................................. 26

*Cunard S.S. Co. Ltd. v. Salen Reefer Svcs. A.B.*,
  773 F.2d 452 (2d Cir. 1985).............................................................................................. 26

*In re Enco Zolcsak Equipamentos Industriais Ltda.*,
  No. 11-22924 (Bankr. S.D. Fla. July 12, 2011) ............................................................... 22

*In re Fazendas Reunidas Boi Gordo, S.A.*,
  No. 09-37116 (Bankr. S.D. Fla. Jan. 11, 2010) ............................................................... 22

*In re Garcia Avila*,
  296 B.R. 95 (Bankr. S.D.N.Y. 2003)................................................................................ 25

*Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*,
  768 F.3d 239 (2d Cir. 2014).............................................................................................. 23

*In re OAS S.A.*,
  533 B.R. 83 (Bankr. S.D.N.Y. 2015)........................................................................... 17, 20

*In re Rede Energia S.A.*,
  No. 14-10078(SCC) (Bankr. S.D.N.Y. March 6, 2014) ................................................... 22

*In re SIFCO S.A.*,
  No. 11179(REG) (Bankr. S.D.N.Y. Oct. 23, 2014)........................................................ 21

*In re SPhinX, Ltd.*,
   351 B.R. 103 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007) ......................... 18

*In re Vitro S.A.B. de CV*,
   701 F.3d 1031 (5th Cir. 2012) .......................................................................................... 20

*Wells Fargo Trust Co., N.A. v. Synergy Group Corp.*,
   No. 18-cv-11151 (S.D.N.Y. Nov. 30, 2018)................................................................. 12, 18

## Statutes

11 U.S.C. § 101 .............................................................................................................. 1, 15, 19

11 U.S.C. § 1501 ..................................................................................................................... 2, 3

11 U.S.C. § 1502 ................................................................................................................. 17, 19

11 U.S.C. § 1506 ...................................................................................................................... 21

11 U.S.C. § 1508 ...................................................................................................................... 14

11 U.S.C. § 1515 ................................................................................................................. 20, 21

11 U.S.C. § 1516 ...................................................................................................................... 17

11 U.S.C. § 1517 ............................................................................................................. 17, 19, 20

11 U.S.C. § 1520 ................................................................................................................. 13, 23

11 U.S.C. § 1521 ...................................................................................................................... 24

11 U.S.C. § 1522 ...................................................................................................................... 27

11 U.S.C. § 1525 ...................................................................................................................... 26

28 U.S.C. § 1410 ..................................................................................................................... 2, 3

28 U.S.C. § 157 ....................................................................................................................... 2, 3

Frederico Miguel Preza Pedreira Elias Da Costa ("Mr. Pedreira" or the "Petitioner"), in his capacity as Foreign Representative (the "Foreign Representative") of Oceanair Linhas Aéreas S/A ("Oceanair") in the Brazilian insolvency proceeding pending before the First Bankruptcy Court of the Central Courthouse of the Judicial District of Sao Paulo State Capital [*Direito Da 1ª Vara De Falências e Recuperações Judiciais do Foro Central da Comarca da Capital – Sao Paolo*] (the "Brazilian Bankruptcy Court") under matter number 1125658-81.2018.8.26.0110 (the "Brazilian Insolvency Proceeding"), hereby files this verified petition and motion for related relief (the "Verified Petition") for entry of an order: (1) recognizing the Brazilian Insolvency Proceeding as a foreign main proceeding pursuant to sections 1515 and 1517 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"); (2) confirming relief pursuant to Bankruptcy Code section 1520; and (3) granting further relief pursuant to Bankruptcy Code sections 105(a), 1507(a), and 1521.[1] This Verified Petition refers to Chapter 15 of the Bankruptcy Code (11 U.S.C. §§ 1501–1532) as "Chapter 15" and to the proceeding resulting from this Verified Petition as this "Chapter 15 Proceeding."

In support of this Verified Petition, the Petitioner files simultaneously herein and incorporates by reference (1) his declaration as the Chief Executive Officer and Foreign Representative of Oceanair (the "Pedreira Declaration" or "Pedreira Decl."); and (2) the declaration of Andre Pinto da Rocha Osorio Gondinho, an attorney specializing in Brazilian restructuring and bankruptcy law (the "Gondinho Declaration" or "Gondinho Decl.").

---

[1]    Simultaneously with this Verified Petition, the Foreign Representative is filing a motion for provisional relief pursuant to Bankruptcy Code sections 1519(a) and 362(a).

## INTRODUCTION

1.      The Foreign Representative commences this Chapter 15 Proceeding for two principal reasons.  The first is to obtain this Court's recognition of the Brazilian Insolvency Proceeding as a foreign main proceeding.  Recognition will (a) stay legal actions against Oceanair and its assets within the territorial jurisdiction of the United States, preserving the *status quo* so that creditors and other parties in interest cannot seize property or litigate outside of the Brazilian Insolvency Proceeding; (b) ensure the enforceability and effectiveness in the United States of the Brazilian Insolvency Proceeding; and (c) provide critical assistance to the Foreign Representative in maximizing the value of assets in the Brazilian Insolvency Proceeding.  The second reason is to ensure that no creditors can bypass the effect of the Brazilian Insolvency Proceedi*ng* by continuing to attempt to take over Oceanair's assets.

2.      Oceanair is a successful Brazilian airline with international operations, including seven weekly flights from Sao Paulo to New York's John F. Kennedy airport ("JFK") and eleven weekly flights from Sao Paulo to Miami International Airport ("MIA").

3.      Despite its success, Oceanair has suffered from the combined effects of an economic crisis in Brazil, dramatic increases in fuel prices, and the diminishing value of Brazil's currency relative to the United States dollar.

4.      Notwithstanding its efforts to renegotiate its debts with its principal creditors, Oceanair has been unable to reach an extra-judicial resolution.

5.      Recently, three of Oceanair's lessors filed foreclosure actions in Brazil seeking to repossess fourteen of Oceanair's aircraft.

6.      Consequently, on December 10, 2018, Oceanair and its parent company, AVB Holdings, S.A. ("AVB," and together with Oceanair, the "Brazilian Debtors") filed a petition for

judicial restructuring before the Brazilian Bankruptcy Court seeking a voluntary judicial restructuring and emergency relief to stay the foreclosure actions.

7.      Subsequently, the Brazilian Bankruptcy Court accepted the Brazilian Debtors' Petitions, granted the request for emergency stays of the Brazilian foreclosure actions, and set a hearing for January 14, 2019.

8.      Oceanair is concerned that counterparties to lease and finance agreements may attempt to seize Oceanair's aircraft and engines that are physically present in the United States, or that parties under certain contracts may attempt to terminate the provision of goods and services vital to maintaining operations at Oceanair's New York and Miami locations.  Indeed, within the last few weeks various parties have threatened such actions or have sought to record liens against Oceanair's property.

9.      In order to allow for an expeditious and effective commercial restructuring in the Brazilian Insolvency Proceeding while ensuring that Oceanair's operations in the United States are not disrupted, Oceanair now seeks the protections afforded by Chapter 15.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b) and 11 U.S.C. § 1501.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1410(a)(1) and (3).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  The Foreign Representative consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

### I.     Overview

11.     Oceanair is a Brazilian commercial airline that is the subject of a voluntary insolvency proceeding in Brazil, known as a *recuperação judicial*, which Oceanair commenced on December 10, 2018.  Pedreira Decl. ¶ 6.  Oceanair's registered office is in Brazil.  Pedreira Decl. ¶ 10.

12.     The Brazilian Insolvency Proceeding is identified with the number 1125658-81.2018.8.26.0100 and was assigned to the First Bankruptcy Court of the Central Courthouse of the Judicial District of Sao Paulo State Capital [*Direito Da 1ª Vara De Falências E Recuperações* Judiciais *Do Foro Central Da Comarca Da Capital – Sao Paolo*], equivalent to a federal Bankruptcy Court in the United States.  Pedreira Decl. ¶ 25.   Exhibit 3 to the Pedreira Declaration is Oceanair's request to initiate a *recuperação judicial* in Portuguese, with an English translation.

13.     The Brazilian Insolvency Proceeding is currently pending in Brazil.  Pedreira Decl. ¶ 28.

### II.     The Brazilian Insolvency Proceeding

14.     On December 10, 2018, the Brazilian Debtors filed a petition for judicial restructuring before the Brazilian Bankruptcy Court seeking a voluntary judicial restructuring and emergency relief staying Brazilian foreclosure actions against their aircraft.  Pedreira Decl. ¶ 25, Ex. 3.

15.     On December 11, 2018, the Brazilian Bankruptcy Court granted the Brazilian Debtors' request for emergency relief and ordered them to amend their petition.  Pedreira Decl. ¶ 26, Ex. 4.

16.     On December 12, 2018, the Brazilian Debtors amended their petition.  Pedreira Decl. ¶ 27, Ex. 5.

17.     On December 13, 2018, the Brazilian Bankruptcy Court extended the emergency relief, granted the request to enter into judicial restructuring and set a hearing for January 14, 2019.  Pedreira Decl. ¶ 28, Ex. 6.

### III.    The Foreign Representative

18.     Mr. Pedreira, a Brazilian citizen who is the Petitioner and Foreign Representative, serves as Oceanair's Chief Executive Officer.  Pedreira Decl. ¶ 3.

19.     Mr. Pedreira has worked for Oceanair since 2009, and has been CEO since March 2016.  Pedreira Decl. ¶ 3.

20.     On November 28, 2018, Oceanair granted Mr. Pedreira authority to represent Oceanair in restructuring proceedings, including by filing a petition under Chapter 15 in the United States.  Pedreira Decl. ¶ 4, Ex. 1.

### IV.    Oceanair

#### A.    Corporate Structure

21.     Oceanair, which was incorporated in 1998 under the laws of Brazil, is a wholly-owned subsidiary of AVB, a Brazilian holding company.  Oceanair's ultimate parents are Synergy Trust, a Guernsey holding company, and Jose Efromovich, a prominent Brazilian businessman.  Pedreira Decl. ¶¶ 7-8.

22.     Oceanair is headquartered at Avenida Washington Luis, 7.059, Campo Belo, São Paulo - SP, Brazil, CEP 04627-006.  Pedreira Decl. ¶ 10.

23.     Oceanair's management is based out of its Brazilian headquarters.  Pedreira Decl. ¶ 11.

24.     Oceanair is part of the Synergy Group ("Synergy"), which also controls indirectly Avianca Holdings S.A. ("Avianca Holdings").  Avianca Holdings has several subsidiary airlines, including TACA Peru, Avianca Colombia (the biggest airline of the group), LACSA (Líneas Aereas Costarricenses) and Avianca Ecuador (Aerogal).   Pedreira Decl. ¶¶ 12-13.

25.     Oceanair, which operates under the name Avianca Brazil, is the fourth biggest airline in Brazil in terms of market share.  It assumed the trade name and logo of "Avianca" in 2010.  Pedreira Decl. ¶ 15.

26.     Oceanair currently operates 249 daily flights, transporting 29,300 passengers daily.  Oceanair's business includes transportation of cargo domestically and internationally. Pedreira Decl. ¶ 17.  Two of Oceanair's international routes serve airports in Miami (MIA) and New York (JFK).  Both routes operate to and from Sao Paulo. Pedreira Decl. ¶ 14.

**B.     Economic Background**

27.     From its inception through 2014, Oceanair grew and expanded.  For example, in 2015, Oceanair became an affiliate of the Star Alliance network, which allows Oceanair to partner with other member and affiliate airlines to provide customers more flexibility in their travel by offering services to more locations.  Pedreira Decl. ¶¶ 15-16.

28.     Despite its early success, Oceanair has been negatively impacted by the ongoing Brazilian economic crisis, which began in 2014.  Pedreira Decl. ¶ 18.

29.     Additionally, dramatic increases in fuel cost have negatively impacted Oceanair's profits in recent years.  The increase in fuel costs was further exacerbated by the increasingly unfavorable exchange rate between Brazil and the United States.  Pedreira Decl. ¶¶ 19-20.

30.     Oceanair responded to these economic pressures by taking steps to reduce operational costs.   These measures were largely successful, such that in 2017 domestic operations generated a profit.  Pedreira Decl. ¶ 21.

6

31.     International operations, however, still resulted in an economic loss due in large

part to the deepening economic crisis, the high cost of fuel, and the concomitant falling value of

the Brazilian currency against the United States Dollar.  Pedreira Decl. ¶ 22.

### C.     Operations and Assets

32.     Oceanair's primary capital assets are its aircraft and its engines, both of which are

the objects of operational leases, as is customary in the airline industry.  Pedreira Decl. ¶ 29.

33.     As of December 2018, Oceanair's fleet consists of 47 aircraft:  4 Airbus A330; 10

Airbus A320Neo; 26 Airbus A320; 4 Airbus A319; and 3 Airbus A318.  Pedreira Decl. ¶ 30.

34.     Oceanair leases each of its aircraft and its engines through operational leases.

Pedreira Decl. ¶ 31.

35.     Oceanair uses five airplanes to service its New York and Miami routes.   All

except one (MSN 1506, as defined below) are passenger aircraft.  MSN 1506 is a cargo aircraft.

The below is a summary of the five operational leases for each of those aircraft.  Pedreira Decl.

¶¶ 38-42.

**MSN 1508 Lease**
On June 12, 2017, Oceanair entered into a ten-year lease agreement with the Bank
of Utah in its capacity as trustee for the N508AV trust for one Airbus A3320-
243F (Serial No. 1508) and two Rolls Royce Trent 772B-60 aircraft engines
(Serial Nos. 42372 and 42373) for approximately $431,846 per month.  The lease
is governed by New York law and subject to the exclusive jurisdiction of the
United States District Court for the Southern District of New York and New York
State, county and city courts.  MSN 1508 is a passenger aircraft.

**MSN 1608 Lease**
On December 4, 2015, Oceanair entered into a ten-year lease agreement with OS
Two LLC for one Airbus A3320-243F (Serial No. 1608) and two Rolls Royce
Trent 772B-60 engines (Serial Nos. 42590 and 42591) for approximately
$890,000 per month plus supplemental rent of $6,600,000 due in the first 60
months of the lease.  The lease was later amended to modify the supplemental
rent.  The lease is governed by New York law and subject to the non-exclusive
jurisdiction of New York state and county courts and the United States District
Court for the Southern District of New York.  MSN 1608 is a passenger aircraft.

**MSN 1657 Lease**

On December 4, 2015, Oceanair entered into a ten-year lease agreement with OS Two LLC for one Airbus A3320-243F (Serial No. 1657) and two Rolls Royce Trent 772B-60 engines (Serial Nos. 42617 and 42618) for approximately $890,000 per month plus supplemental rent of $6,600,000 due in the first 60 months of the lease.  The lease was later amended to modify the supplemental rent.  The lease is governed by New York law and subject to the non-exclusive jurisdiction of New York state and county courts and the United States District Court for the Southern District of New York.  MSN 1657 is a passenger aircraft.

**MSN 1208 Sublease**

On June 5, 2018, Oceanair entered into a four-year Aircraft Sublease Agreement with Aerovia del Continente Americano, S.A. Avianca for the sublease of one Airbus A3320-243 (Serial No. 1208) and two Rolls Royce Trent 772B-60 aircraft engines (Serial Nos. 41880 and 41900), which Avianca had previously leased from Wells Fargo Trust Company.  Monthly rent due under the sublease is $750,000.  The lease is governed by New York law and subject to the jurisdiction of New York County courts and United States Federal Courts for the Southern District of New York.  MSN 1208 is a passenger aircraft.

**MSN 1506 Sublease**

On April 4, 2014, Oceanair entered into an Aircraft Sublease Agreement with Aerovia del Continente Americano, S.A. Avianca for the sublease of one Airbus A3320-243F (Serial No. 1506) and two Rolls Royce Trent 772B-60 aircraft engines (Serial Nos. 42370 and 42371), which Avianca had previously leased from Aircol 34.  The term of the sublease is from April 2014 to April 2026.  The sublease monthly rental amount was originally for $886,047.  In 2017, the parties amended the sublease to reduce the monthly rent to $740,000 effective January 1, 2017.  The sublease is governed by English law and subject to the non-exclusive jurisdiction of the English courts.  MSN 1506 is a cargo aircraft.

36.     Oceanair also leases two CFM56-5B4/3 aircraft engines (Engine Serial Numbers ("ESN") 573750 and 643846) from Wells Fargo Bank Northwest, N.A.  Pedreira Decl. ¶ 43.

37.     ESN 573750 is leased under a 96-month lease agreement entered into on October 18, 2016 for a monthly rate of $72,500.  Pedreira Decl. ¶ 44.

38.     ESN 643846 is leased under a 120-month lease agreement entered into on August 25, 2016 for a monthly rate of $70,000.  Pedreira Decl. ¶ 45.

### D. Employees

39.     Oceanair employs more than 5,500 people; of those, the vast majority are in Brazil.  Pedreira Decl. ¶ 33.

40.     To support its operations in the United States, Oceanair primarily outsources its personnel requirements to its partner airlines or service providers.   Pedreira Decl. ¶ 34.

### E. Revenue

41.     In 2017, Oceanair's annual revenue was $12,465,716 and net income was approximately $763,112.64.  Pedreira Decl. ¶ 35.

42.     In 2018, Oceanair projects annual revenue of $44,807,874.82 and net income of (1,640,459.70).  Pedreira Decl. ¶ 36.

43.     Oceanair derives a majority of its income from its domestic operations.  Pedreira Decl. ¶ 37

### F. Property Located in the United States[2]

44.     While most of Oceanair's property is located in Brazil, in order to operate its United States routes, Oceanair has various licenses, leases and contracts with entities based in the United States or to serve Oceanair's operations in the United States.  Pedreira Decl. ¶¶ 30, 38, 47.

45.     First, as noted above, Oceanair is a party to four aircraft and engine leases with lessors or interested parties that are located in the United States: (a) the ten-year MSN 1508 Lease, between Oceanair and Bank of Utah, a Utah corporation; (b) the ten-year MSN 1608 Lease, between Oceanair and OS Two, LLC ("OS Two"), a Delaware corporation; (c) the ten-

---

[2]     A majority of Oceanair's property is in Brazil.  Pedreira Decl. ¶ 47.  However, Oceanair has service contracts and lease agreements with various United States entities in connection with its United States operations.  The major service contracts and lease agreements are summarized herein.  Schedule A is a list of Oceanair's key United States creditors.

year MSN 1657 Lease between Oceanair and OS Two; and (d) the four-year MSN 1208 Sublease between Oceanair and Avianca, under which the original lessor is Wells Fargo Trust Company, N.A. ("Wells Fargo Trust Company"), a Utah corporation.  Pedreira Decl. ¶¶ 39-42.

46.    Second, in connection with its United States routes, Oceanair holds and must maintain licenses to use the United States airport facilities, including a right to use shared aircraft gates at JFK in New York and to use airport facilities at MIA in Miami, Florida under an Airport Use Agreement.  Pedreira Decl. ¶ 47, Exs. 14 & 15.

47.    Third, Oceanair purchases fuel in the United States under fuel contracts with fuel service providers located in the United States.  Pedreira Decl. ¶ 48, Ex. 16 & 23.

48.    Fourth, Oceanair has contracts with various entities that provide ground services at the New York and Miami airports, including baggage handling, cleaning, and passenger transport services.  Pedreira Decl. ¶ 48, Exs. 17-22, 24-25.

49.    The below list summarizes Oceanair's key United States contracts.

**THE JFK AIRPORT CONTRACTS**

A two-year license agreement for use of Terminal 4 at JFK with John F. Kennedy International Air Terminal, LLC ("JFK Terminal").    The contract is governed by New York law.

A one-year contract with World Fuel Services, Inc. ("World Fuel Services") for the purchase of jet fuel and related services at JFK.[3]  The contract is governed by New York law and subject to the jurisdiction of New York state and federal courts.

A three-year contract for ground handling services and passenger services at JFK with Swissport USA, Inc. ("Swissport").  The contract is governed by New York law.

---

[3]    Though the contract period has expired, World Fuel Services continues to provide fuel to Oceanair at JFK under the terms of the contract.

A two-year contract for aircraft cleaning services at JFK with Airway Cleaners, LLC ("Airway Cleaners"). The contract is governed by New York law.

A three-year contract for crew lodging at JFK with Hotel Westbury Operating Corp. (Holiday Inn Westbury) ("Westbury"). The contract is governed by New York law.

A one-year, automatically renewing, contract for cargo handling services at JFK with MSN Aviation Services, Inc. ("MSN"). The contract is governed by New York law and subject to the jurisdiction of New York courts.

A three-year contract with Golden Touch Transportation of NY, Inc. ("Golden Touch") for crew transportation at JFK. The contract is governed by New York law.

## THE MIAMI AIRPORT CONTRACTS

A one-year, automatically renewing, contract with Avianca, Inc., America Central Corp. ("Avianca") for station management services at MIA. On December 15, 2017, Oceanair and Avianca amended that agreement to include station management services at JFK. The contract is governed by Florida law and subject to the jurisdiction of the Florida courts.

A one-year contract with Associated Energy Group, LLC ("AEG") for fuel purchase and related services at MIA. After the initial one-year term, the contract extends indefinitely until cancelled by one of the parties. The contract is governed by New York law and subject to the jurisdiction of New York state courts.

An annually renewing one-year contract with Tampa Cargo, S.A.S. ("Tampa Cargo") for cargo handling services at MIA. The contract is governed by Colombian law and subject to the jurisdiction of the Colombian courts.

A three-year contract for ground handling and passenger services with Ultra Aviation Services, Inc. ("Ultra"). The contract is governed by Florida law and subject to the jurisdiction of Florida courts.

Pedreira Decl. ¶¶ 48-50.

50.     Oceanair has also paid a cash retainer to Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") in connection with this case, and maintains an interest in the unearned portion of these retainer funds, which are maintained in a U.S. bank account. Pedreira Decl. ¶ 51.

### G.     Capital Structure

51.     Oceanair does not have any bond debt or fuel hedge arrangements.  Its primary debt is in the form of its obligations under its aircraft and engine leases.  Pedreira Decl. ¶ 9.

## V.     United States Proceedings

52.     Oceanair is a defendant in *Zodiac Seats US LLC v. Synergy Aerospace Corporation et al.*, No. 17-CV-00243, pending in the Eastern District of Texas, which is where Zodiac Seats U.S., LLC ("Zodiac") is located.  Pedreira Decl. ¶ 52.  The suit is for breach of contract related to alleged non-payment by Synergy for seats installed on aircraft operated by Avianca and Oceanair.  *Id.*

53.     On November 30, 2018, Wells Fargo Trust Company filed suit against Oceanair's ultimate parent, Synergy, in the Southern District of New York in a case entitled *Wells Fargo Trust Co., N.A. v. Synergy Group Corp.*, No. 18-cv-11151 (S.D.N.Y. Nov. 30, 2018), ECF 1 (Complaint).  Pedreira Decl. ¶ 53.  The Complaint alleges breach of guaranty against Synergy in connection with the breach of a lease agreement between Wells Fargo Trust Company and Oceanair for two aircraft engines (Serial Nos. 643846 and 573750).  *Id.*

54.     On December 17, 2018, Swissport sent a letter to Oceanair informing it that Swissport would suspend ground services if Oceanair did not pay in full past-due amounts. Pedreira Decl. ¶ 54.

55.     On December 20, 2018, Oceanair received notifications of several mechanic's liens filed against the aircraft it uses to operate its U.S. routes, including the following:

a.   A lien filed December 12, 2018, in Dade County, Florida, by AEG for $150,744.39 against MSN 1208 (Registration No. PR-OBS);

b.   A lien filed December 12, 2018, in Dade County, Florida, by AEG for $188,489.98 against MSN 1492 (Registration No. PR-OCJ);

c.   A lien filed December 12, 2018, in Dade County, Florida, by AEG for $252,336.87 against MSN 1657 (Registration No. PR-OCX);

d.   A lien filed December 12, 2018, in Dade County, Florida, by AEG for $57,477.22 against MSN 1608 (Registration No. PR-OCG);

e.   A lien filed December 12, 2018, in Dade County, Florida, by AEG for $56,696.65 against MSN 1508 (Registration No. PR-OCK); and

f.   A lien filed December 12, 2018, in Dade County, Florida, by AEG for $226, 637.76 against MSN 1506 (Registration No. PR-ONV).

Pedreira Decl. ¶ 55.

56.   On December 26, 2018, Oceanair received two Enforcement Notices dated December 19, 2018, from Bank of Utah in connection with Oceanair's lease obligations under the MSN 1608 Lease and the MSN 1657 Lease.  Pedreira Decl. ¶ 56.

## RELIEF REQUESTED

57.   The Petitioner respectfully requests that this Court enter an order, substantially in the form of the proposed order attached hereto as Appendix A (the "Proposed Order"), pursuant to sections 105(a), 1507(a), 1515, 1517, 1520, 1521(a) and 1521(b) of the Bankruptcy Code that:

a.   recognizes the Brazilian Insolvency Proceeding as a foreign main proceeding (as defined in section 1502 of the Bankruptcy Code) and grants Oceanair all of the relief afforded to such proceedings pursuant to section 1520 of the Bankruptcy Code, or, alternatively, recognizes the Brazilian Insolvency Proceeding as a foreign nonmain proceeding (as defined in section 1502 of the Bankruptcy Code) and grants Oceanair all of the relief requested herein pursuant to section 1521 of the Bankruptcy Code;

b.   recognizes the Petitioner as a "Foreign Representative" as defined in section 101(24) of the Bankruptcy Code in respect of the Brazilian Insolvency Proceeding;

c.   entrusts the administration, realization and distribution of any and all of Oceanair's assets within the territorial jurisdiction of the United States to the Petitioner, pursuant to sections 1521(a)(5) and 1521(b) of the Bankruptcy Code;

d.   to the extent not already provided in 11 U.S.C. § 1520, enjoins all creditors and other persons, from (i) disposing or otherwise taking any action against any property of Oceanair; and (ii) taking or continuing any act to obtain possession of, or exercise control over, such property;

e.   to the extent not already provided in 11 U.S.C. § 1520, enjoins the commencement of any suit, action or proceeding in the territorial jurisdiction of the United States to resolve any dispute arising out of the Brazilian Insolvency Proceeding or any orders issued by the Brazilian Bankruptcy Court identified in the Verified Petition, or the Brazilian law relating thereto;

f.   provides that no action taken by the Petitioner in preparing, disseminating, applying for, implementing or otherwise in connection with any Brazilian Bankruptcy Court order, any order entered in respect of the Verified Petition, this Chapter 15 Proceeding, any further order for additional relief in this Chapter 15 Proceeding, or any adversary proceedings or contested matters in connection therewith, will be deemed to constitute a waiver of any immunity afforded the Petitioner as Foreign Representative, including without limitation pursuant to section 1510 of the Bankruptcy Code;

g.   provides that this Court shall retain jurisdiction with respect to the effect, enforcement, amendment or modification of such order; and

h.   provides related relief and such other and further relief as the Court deems proper and just (together with the relief requested in sub-paragraphs (a) through (g), the "Relief Requested").

## **BASIS FOR RELIEF**

58.   The Relief Requested is based on the provisions of Chapter 15 of the Bankruptcy Code. As directed by the statute, in interpreting Chapter 15, a court is to "consider its international origin, and the need to promote an application of [Chapter 15] that is consistent with the application of similar statutes adopted by foreign jurisdictions." 11 U.S.C. § 1508.

59.   Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, the Court shall enter an order recognizing a foreign proceeding as a foreign main proceeding if (a) such foreign proceeding is a foreign main proceeding within the meaning of section 1502 of

14

the Bankruptcy Code; (b) the foreign representative applying for recognition is a person or body;

and (c) the petition meets the requirements of section 1515 of the Bankruptcy Code. *See In re*

*Oversight & Control Comm'n of Avánzit, S.A.*, 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008).

**I.      The Brazilian Insolvency Proceeding Should be Recognized As A Foreign Main
         Proceeding**

60.      The Brazilian Insolvency Proceeding, the Petitioner, and the Verified Petition

satisfy all of the foregoing requirements.

**A.      The Brazilian Insolvency Proceeding is a Foreign Main Proceeding**

61.      The Brazilian Insolvency Proceeding is a "foreign proceeding" as that term is

defined in section 101(23) of the Bankruptcy Code.  Bankruptcy Code section 101(23) defines

"foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country,

including an interim proceeding, under a law relating to insolvency or adjustment of debt in

which proceeding the assets and affairs of the debtor are subject to control or supervision by a

foreign court, for the purpose of reorganization or liquidation."  11 U.S.C. § 101(23).

62.      Here, there is no dispute that the Brazilian Insolvency Proceeding is an insolvency

proceeding brought under the Brazilian Bankruptcy Law, which provides a statutory means for

applicants thereunder to reorganize their financial affairs subject to the supervision of a court.

Gondinho Decl. ¶¶ 6-7.  Specifically, approval of the Brazilian Bankruptcy Court is necessary

for a restructuring plan to become effective, and the Brazilian Bankruptcy Court will retain

jurisdiction to enforce the terms of the plan.  *Id.* ¶ 26.

63.      Oceanair's Brazilian Insolvency Proceeding is pending in a foreign country

(Brazil) under a law relating to insolvency, *see id.* ¶ 6, pursuant to which the assets and affairs of

a debtor are subject to the control and supervision of the Brazilian Bankruptcy Court.  *See id.* ¶¶

6-7, 13.  Indeed, the Brazilian Bankruptcy Law has many features in common with or similar to

the Bankruptcy Code, such as the debtor remaining in possession, provisions to establish an official creditors' committee, a policy favoring rehabilitation over liquidation, a mechanism for binding dissenting creditors, and the general policy of equal treatment of creditors. *Id.* ¶¶ 6, 13, 15.

64.    Moreover, in order to protect debtors and their creditors from particular creditors foreclosing on the debtor's assets to the detriment of the others, the Brazilian Bankruptcy Law also provides for a general stay (similar to the Bankruptcy Code's automatic stay), by which the Brazilian Bankruptcy Court orders the temporary suspension of enforcement proceedings against the debtor, putting an end to the "race to the courthouse" in order to allow for the plan negotiation process to progress constructively. *See id.* ¶ 12.    Post-petition financing is also allowed in Brazil, and claims for amounts advanced are given super-priority treatment in case of "bankruptcy" (i.e., liquidation in the event the judicial reorganization fails). *See id.* ¶ 14.

65.    Further, the Brazilian Insolvency Proceeding is "collective" in nature because it is comprehensive as to all of the debtor company's assets and creditors. *See In re British Am. Ins. Co.*, 425 B.R. 884, 902 (Bankr. S.D. Fla. 2010); *In re ABC Learning Ctrs. Ltd.*, 445 B.R. 318, 328 (Bankr. D. Del. 2010) ("A proceeding is collective if it considers the rights and obligations of all creditors."), *aff'd*, 728 F.3d 301 (3d Cir. 2013); Gondinho Decl. ¶ 26.    Courts addressing whether a proceeding is "collective" look to such proceeding's consideration of creditors in general.    In contrast, non-collective proceedings, such as foreclosure proceedings, for example, are instituted to protect the rights of a single, secured creditor. *See In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009); *ABC Learning Ctrs.*, 445 B.R. at 334–35 (using the term "all creditors" to mean creditors in general).    Thus, provided that a proceeding "contemplates both the consideration and eventual treatment of claims of various types of creditors, as well as the

possibility that creditors may take part in the foreign action," it is "collective" in nature.  *British Am. Ins.*, 425 B.R. at 902; *see In re British Am. Isle of Venice (BVI), Ltd.*, 441 B.R. 713, 717–18 (Bankr. S.D. Fla. 2010) (holding that proceeding was collective in nature where all creditors had right to be heard).

66.     The Brazilian Insolvency Proceeding is focused on fair treatment of the broad array of creditors and stakeholders by (a) providing notice of the proceeding by mail and by publication to all of the debtors' creditors; (b) staying proceedings so that individual creditors may not obtain an advantage over similarly situated creditors; (c) preventing the debtors from making preferential payments to creditors; (d) establishing deadlines for filing proofs of claim; and (e) providing procedures for voting to accept or reject a reorganization plan.  Gondinho Decl. ¶¶ 12, 20, 23-26.

67.     Chapter 15 courts have repeatedly held that Brazilian insolvency proceedings are "foreign proceedings" within the meaning of the Bankruptcy Code.  *See, e.g.*, *In re OAS S.A.*, 533 B.R. 83, 103 (Bankr. S.D.N.Y. 2015).  Accordingly, Oceanair's Brazilian Insolvency Proceeding qualifies as a "foreign proceeding" under the Bankruptcy Code.

68.     Beyond qualifying as a "foreign proceeding" under section 101(23), the Brazilian Insolvency Proceeding qualifies as a "foreign main proceeding," which is defined in the Bankruptcy Code as "a foreign proceeding pending in the country where the debtor has the center of its main interests."  *See* 11 U.S.C. § 1502(4); *see also* 11 U.S.C. § 1517(b)(1) (providing that an order of recognition as a foreign main proceeding shall be entered if the foreign proceeding "is pending in the country where the debtor has the center of its main interests").

69.     The term "center of main interests" (or "COMI") is not defined in the Bankruptcy

Code.  In the absence of evidence to the contrary, a debtor's COMI is presumed to be located at

its registered office.  *See* 11 U.S.C. § 1516(c).

70.     In addition to the location of the debtor's registered office, courts in this district

have identified five non-exhaustive factors in determining a debtor's COMI:

a.      the location of those who actually manage the debtor (which may be the headquarters of a holding company);

b.      the location of the debtor's headquarters;

c.      the location of the debtor's primary assets;

d.      the location of the majority of the debtor's creditors or the majority of the creditors affected by the case; and

e.      the jurisdiction whose law would apply to most disputes.

*See In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y.

2007); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R.

122, 128 (Bankr. S.D.N.Y. 2007).

71.     Oceanair's registered office is in Brazil and nearly all of its corporate business is

conducted and directed from Brazil.  *See supra* Section I.  Specifically, (a) Oceanair is a

company organized under the laws of Brazil with its headquarters,[4] registered office and

principal place of business in Brazil; (b) Oceanair's senior management, including, but not

limited to, the CEO, the Chief Financial Officer, and the Chief Legal Officer, is based in Brazil;

(c) Oceanair houses most of its cash management and accounting functions in Brazil; (d) the vast

majority of Oceanair's employees are residents of and work in Brazil; and (e) the majority of

---

[4]      The Foreign Representative notes that in an answer Oceanair filed on July 6, 2017 in the District Court for the Eastern District of Texas, *Zodiac Seats US LLC v. Synergy Aerospace Corporation et al.*, it admitted three paragraphs in the plaintiff's complaint, one of which alleged that Oceanair was organized under Panamanian law. This was an erroneous admission.  Oceanair is organized under Brazilian law, and maintains its registered office in Brazil.

Oceanair's assets – its aircraft – fly in Brazil or operate internationally to and from Sao Paolo, with no international flights between countries not involving Brazil.  Pedreira Decl. ¶14.

72.    For all of the foregoing reasons, the Brazilian Insolvency Proceeding is, and should be recognized as, a foreign main proceeding in respect of Oceanair.

### B.    Alternatively, the Brazilian Insolvency Proceeding is a Foreign Nonmain Proceeding

73.    Alternatively, in the event the Court concludes that the Brazilian Insolvency Proceeding is not a foreign main proceeding, it is clear that it is a "foreign nonmain proceeding," which Bankruptcy Code section 1502(5) defines as "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment."  11 U.S.C. § 1502(5).  Bankruptcy Code section 1502(2) defines "establishment" as "any place of operations where the debtor carries out a nontransitory economic activity."  11 U.S.C. § 1502(2).  Based on the facts set forth in the Verified Petition and the accompanying Declarations, it is clear that Oceanair conducts regular business in Brazil, thereby satisfying the requirement of an "establishment" under Bankruptcy Code section 1502(2).  Accordingly, in the event the Court finds that Oceanair's COMI is not in Brazil, the Brazilian Insolvency Proceeding nonetheless is entitled to recognition as a foreign nonmain proceeding and the other relief requested herein.

### C.    The Petitioner is a Foreign Representative Who Is a Person

74.    The second requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the foreign representative applying for recognition be a "person or body."  11 U.S.C. § 1517(a)(2).

75.    The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets

or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). Under

section 101(41), the "term 'person' includes [an] individual." 11 U.S.C. § 101(41).

76.     The Petitioner is an individual who has been authorized and appointed by

Oceanair to serve as its Foreign Representative. *See supra* Section II. Thus, Mr. Pedreira

satisfies the second requirement for entry of an order recognizing the Brazilian Insolvency

Proceeding as a foreign main proceeding. *See In re OAS S.A.*, 533 B.R. 83, 95 (Bankr. S.D.N.Y.

2015) (recognizing as foreign representative of a Brazilian company an individual appointed by

the company's board); *In re Compania Mexicana de Aviacion, S.A. de C.V.*, 2010 WL 10063842

(S.D.N.Y. Nov. 8, 2010) (recognizing as foreign representative of a Mexican airline an

individual appointed and authorized by the company's Board of Directors); *see also id.*, ECF No.

275; *In re Vitro, S.A.B. de C.V.*, 470 B.R. 408, 413 (N.D. Tex.), *aff'd sub nom. In re Vitro S.A.B.

de CV*, 701 F.3d 1031 (5th Cir. 2012) (holding that possible foreign representatives of a Mexican

company include individuals appointed by the company's Board of Directors).

### D.      The Verified Petition Meets the Requirements of Section 1515

77.     The third and final requirement for recognition of a foreign proceeding under

section 1517(a) of the Bankruptcy Code is that the petition for recognition meets the procedural

requirements of section 1515 of the Bankruptcy Code. *See* 11 U.S.C. § 1517(a)(3). Bankruptcy

Code section 1515 provides that a foreign representative "applies to the court for recognition of a

foreign proceeding in which the foreign representative has been appointed by filing a petition for

recognition." 11 U.S.C. § 1515(a). The petition must be accompanied by

> (1) a certified copy of the decision commencing such foreign
> proceeding and appointing the foreign representative;
>
> (2) a certificate from the foreign court affirming the existence of
> such foreign proceeding and of the appointment of the foreign
> representative; or

(3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

11 U.S.C. § 1515(b). In addition, the petition must be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative. 11 U.S.C. § 1515(c).

78.    Here, all of the requirements of section 1515 of the Bankruptcy Code have been met. *First*, this Chapter 15 Proceeding was commenced by the Petitioner through the filing of the Verified Petition as required by section 1515(a) of the Bankruptcy Code.

79.    *Second*, evidence of the existence of the Brazilian Insolvency Proceeding and of the appointment of the Petitioner as the Foreign Representative have been provided to the Court as required under sections 1515(b)(1) and (d) of the Bankruptcy Code.

80.    *Third*, in accordance with section 1515(c) of the Bankruptcy Code, Mr. Pedreira has filed a statement identifying the Brazilian Insolvency Proceeding as the only foreign proceeding currently pending with respect to Oceanair.

81.    *Fourth*, the introductory language of section 1517 of the Bankruptcy Code refers to section 1506, which grants the Court discretion to deny relief if it would be "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506. Here, the relief requested by the Foreign Representative is not manifestly contrary to, but rather is consistent with, United States public policy, which courts have construed very narrowly. *See In re Ashapura Minechem Ltd.*, 480 B.R. 129, 139 n.60 (S.D.N.Y. 2012) (explaining that courts have "uniformly" interpreted the public policy exception "narrowly and applied it sparingly"); *British Am. Isle of Venice*, 441 B.R. at 717 (same).

82.     The public policy exception contained in section 1506 has no application here, and numerous courts have already held that Brazil's insolvency regime, when appropriately functioning and administered, does not violate public policy.  *See, e.g.*, *In re SIFCO S.A.*, No. 11179 (REG) [ECF 38] (Bankr. S.D.N.Y. Oct. 23, 2014) (recognizing, as a foreign main proceeding, a case filed pursuant to the in-court reorganization section of the Brazilian Bankruptcy Law); *In re Rede Energia S.A.*, No. 14-10078 (SCC) [ECF 18] (Bankr. S.D.N.Y. March 6, 2014) (same); *In re Centrais Elétricas Do Pará S.A.*, No. 12-14568 (SCC) [ECF 19] (Bankr. S.D.N.Y. Dec. 12, 2012) (same); *In re Independência S.A.*, No. 09-10903 [ECF 23] (Bankr. S.D.N.Y. Mar. 26, 2009) (same); *In re VarigLogística S.A.*, No. 09-15717 [ECF 77] (Bankr. S.D. Fla. May 11, 2009) (same); *see also In re ITSA Intercontinental Telecomunicações Ltda.*, No. 08-13927 [ECF 16] (Bankr. S.D.N.Y. Jan. 29, 2009) (recognizing a foreign Brazilian bankruptcy proceeding that confirmed a pre-negotiated plan of reorganization); *In re Enco Zolcsak Equipamentos Industriais Ltda.*, No. 11-22924 [ECF 15] (Bankr. S.D. Fla. July 12, 2011) (recognizing, as a foreign main proceeding, a case filed and pending pursuant to Brazilian Bankruptcy Law); *In re Transbrasil S.A. Linhas Aéreas*, No. 11-19484 [ECF 9] (Bankr. S.D. Fla. May 11, 2011) (same); *In re Banco Santos, S.A.*, No. 10-47543 [ECF 9] (Bankr. S.D. Fla. Jan. 13, 2011) (same); *In re Fazendas Reunidas Boi Gordo, S.A.*, No. 09-37116 [ECF 7] (Bankr. S.D. Fla. Jan. 11, 2010) (same).  The Petitioner is aware of no chapter 15 cases where a United States bankruptcy court failed to find that a proceeding commenced under the Brazilian Bankruptcy Law was a "foreign proceeding" or denied recognition of any such proceeding under chapter 15.

83.     Recognizing the Brazilian Insolvency Proceeding and enjoining certain actions or proceedings with respect to Oceanair and its assets here in the United States will assist the orderly administration of Oceanair's assets and implementation of the restructuring provided in

Brazil.  Such orderly administration is demonstrably consistent with the public policy of the United States, as embodied in the Bankruptcy Code.

84.     Accordingly, each of the requirements of section 1517(a) has been satisfied, and entry of an order recognizing the Brazilian Insolvency Proceeding as a foreign main proceeding is proper.

## II.     Oceanair Is Entitled To Automatic Relief Under Section 1520

85.     Section 1520(a) of the Bankruptcy Code sets forth statutory protections that automatically result from the recognition of a foreign proceeding as a foreign main proceeding, *see* 11 U.S.C. § 1520(a), including the application of the automatic stay under section 362(a) of the Bankruptcy Code, which prohibits any act to exercise or obtain possession or control over, or to commence or continue any action against, the debtor and its property within the territorial jurisdiction of the United States that could have been commenced prior to the commencement of this case.  Thus, once the Court recognizes a foreign main proceeding, no further showing is required to obtain such protections.  *See Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*, 768 F.3d 239, 245-46 (2d Cir. 2014) (holding that section 1520 applies automatically upon granting of foreign main recognition).

## III.    Discretionary Relief Under Section 1521 Should Also Be Granted

86.     To ensure the enforceability in the United States of any orders issued by the Brazilian Bankruptcy Court and to protect the assets of Oceanair, relief under section 1521 is appropriate.   Specifically, the Foreign Representative respectfully requests that this Court exercise its power under section 1521 (and section 1507) to grant the following relief:

87.     *First*, the Foreign Representative requests, pursuant to Bankruptcy Code sections 1521(a)(5) and 1521(b), that this Court entrust him with the administration, realization and distribution of any and all of Oceanair's assets within the territorial jurisdiction of the United

States.  Oceanair operates at two airports in the United States and needs to make sure that there is
no question that the Foreign Representative has authority to act, and transact, in the ordinary
course of business.

88.    *Second*, to the extent this Court does not recognize the Brazilian Insolvency
Proceeding as a foreign main proceeding, the Foreign Representative requests, pursuant to
Bankruptcy Code sections 1521(a)(2) and (3), that this Court enjoin all creditors and other
persons, from (a) disposing or otherwise taking any action against any property of Oceanair; and
(b) taking or continuing any act to obtain possession of, or exercise control over, such property.

89.    *Third*, to the extent this Court does not recognize the Brazilian Insolvency
Proceeding as the foreign main proceeding, the Foreign Representative requests, pursuant to
Bankruptcy Code sections 1521(a)(1) and (7), that this Court enjoin the commencement of any
suit, action or proceeding in the territorial jurisdiction of the United States to resolve any dispute
arising out of the Brazilian Insolvency Proceeding or any orders issued by the Brazilian
Bankruptcy Court or the Brazilian law relating thereto.

90.    The standard for issuance of relief under sections 1521(a)(1), (2) and (3) of the
Bankruptcy Code is the same as is required for an injunction.  *See* 11 U.S.C. § 1521(e).
Accordingly, the following factors applicable to the issuance of an injunction apply to the
Verified Petition:  (a) a likelihood of success on the merits; (b) a likelihood that the movant will
suffer irreparable injury if the injunction is not issued; (c) that the threatened injury to the
movant outweighs any damage the injunction might cause the opponent; and (d) that the
injunction will not disserve the public interest. *See JBR, Inc. v. Keurig Green Mountain, Inc.*,
618 F. App'x 31, 33 (2d Cir. 2015).  The Foreign Representative contends that these four factors
are easily met.

24

## A.    Likelihood of Success on the Merits

91.    There is no question that the Brazilian Insolvency Proceeding will be recognized. The Brazilian Insolvency Proceeding is clearly a "foreign proceeding" under Chapter 15, and Oceanair's COMI is clearly Brazil.  There is no serious question that the Foreign Representative is entitled to and will succeed in obtaining relief under section 1521 of the Bankruptcy Code.

## B.    Likelihood of Irreparable Injury If Injunction Not Granted

92.    If foreign main recognition is not granted, there is undoubtedly a substantial threat of irreparable harm to Oceanair if injunctive relief under section 1521 is not granted. Specifically, injunctive relief is necessary to protect aircraft, equipment and parts that are subject to contractual arrangements with lessors and lenders, and thus subject to potential repossession, attachment or levy.

93.    In addition, absent injunctive relief, Oceanair's United States-based service providers may initiate litigation against Oceanair, attempt to cancel Oceanair's licenses, or refuse to prove services to Oceanair under existing contractual agreements.  Any of these disruptions would effectively preclude Oceanair from operating its United States routes.  The inability to operate its United States routes would cause significant financial loss to Oceanair, and would disrupt travel for thousands of Oceanair customers.

94.    It is well-established that irreparable harm to a debtor's estate is present where local actions are not enjoined and can disrupt a foreign proceeding.  *See, e.g.*, *In re Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) ("[I]rreparable harm is present when the failure to enjoin local actions will disrupt the orderly reconciliation of claims and the fair distribution of assets in a single, centralized forum.") (quoting Collier on Bankruptcy ¶ 304.05, at 304–21 (15th ed. Rev. 2003)).  The Foreign Representative submits that the second prong of the injunctive relief standard is therefore satisfied under these circumstances.

### C.    Threatened Injury to Oceanair Outweighs Any Damage to Third Parties

95.    The relief requested herein will benefit Oceanair by ensuring an equitable and orderly implementation of the Brazilian Insolvency Proceeding process.  *See, e.g.*, *In re Crystallex Int'l Corp.*, No. 11-14074 (Bankr. D. Del. Dec. 28, 2011), ECF No. 20 (stating that failing to issue a provisional stay against creditors in a chapter 15 case could "undermine the Foreign Representative's efforts to achieve an equitable result for the benefit of all of the Debtor's creditors").  Leaving Oceanair's assets exposed to attack could lead to a piecemeal distribution of its assets and hinder its ability to conduct operations, a reality that outweighs any perceived harm to any other party.  Accordingly, the threatened injury to Oceanair that would result if relief is not granted under section 1521 clearly outweighs any damage third parties could suffer as a result of such relief.

### D.    Injunction Will Serve Public Interest

96.    The relief requested under section 1521 will not disserve the public interest; on the contrary, granting such relief is in the public interest as it will facilitate a cross-border reorganization that will provide a benefit to Oceanair's creditors.  *See, e.g.*, *Cunard S.S. Co. Ltd. v. Salen Reefer Svcs. A.B.*, 773 F.2d 452, 458 (2d Cir. 1985) ("The granting of comity to a foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion.").

### E.    Granting Relief Is Proper as Interests of Creditors and Other Interested Parties are Sufficiently Protected

97.    The relief requested under section 1521 is founded on the Congressional mandate to cooperate with foreign proceedings and the foreign representative's goal to promote the goals of Chapter 15.  *See* 11 U.S.C. § 1525(a) ("Consistent with section 1501, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative, either directly or

through the trustee.").  Such relief is "appropriate," as that term is used in section 1521, because it is necessary to ensure the success of the Brazilian Insolvency Proceeding.  The Court may grant such relief, however, "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a).

98.      It is clear that the interests of any creditors and all other interested parties are sufficiently protected by the treatment afforded to them in the Proposed Order.  Accordingly, the Court may grant relief under section 1521 because the interests of creditors and other interest entities are sufficiently protected in the Brazilian Insolvency Proceeding.

### F.      No Waiver of Foreign Representative's Immunity

99.      The order in respect of this Verified Petition should provide that no action taken by the Petitioner in preparing, disseminating, applying for, implementing or otherwise in connection with the Verified Petition, this Chapter 15 Proceeding, any further order for additional relief in this Chapter 15 Proceeding, or any adversary proceedings or contested matters in connection therewith, will be deemed to constitute a waiver of any immunity afforded the Petitioner as Foreign Representative, including without limitation pursuant to section 1510 of the Bankruptcy Code.

### PRAYER FOR RELIEF

100.      The Foreign Representative respectfully requests entry of an order in the form of the Proposed Order filed contemporaneously herewith, thereby recognizing the Brazilian Insolvency Proceeding as a foreign main proceeding (or alternatively, as a foreign nonmain proceeding) and granting the other relief requested herein and all such other relief, at law or in equity, to which the Foreign Representative is justly entitled.

Dated: December 27, 2018          QUINN EMANUEL URQUHART & SULLIVAN LLP
New York, New York

/s/     Scott C. Shelley
Scott C. Shelley
Michael B. Carlinsky
Samantha Gillespie
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100
scottshelley@quinnemanuel.com
michaelcarlinsky@quinnemanuel.com
samanthagillespie@quinnemanuel.com

Eric Winston (*pro hac vice* pending)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100
ericwinston@quinnemanuel.com

*Attorneys for the Foreign Representative*

# APPENDIX A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| Oceanair Linhas Aéreas S/A | Case No. 18-_____ |
| Debtor in a Foreign Proceeding. | |

### ORDER GRANTING RECOGNITION OF FOREIGN MAIN PROCEEDING AND DISCRETIONARY RELIEF

This matter having come before the Court upon the Verified Petition (the "Verified Petition") of Oceanair Linhas Aéreas S/A ("Oceanair" or the "Debtor") filed by Frederico Miguel Preza Pedreira Elias Da Costa ("Mr. Pedreira" or the "Petitioner"), in his capacity as the Foreign Representative (as defined under section 101(24) of title 11 of the United States Code (the "Bankruptcy Code")) of the Debtor (the "Foreign Representative"), in the above-captioned case under chapter 15 of the Bankruptcy Code, seeking the entry of an order (1) recognizing the Brazilian Insolvency Proceeding (as defined in this Verified Petition[1]) as a foreign main proceeding pursuant to sections 1515 and 1517 of the Bankruptcy Code; (2) confirming relief pursuant to Bankruptcy Code section 1520; (3) granting interim relief pursuant to Bankruptcy Code sections 1519 and 1521; and (4) granting further relief pursuant to Bankruptcy Code sections 105(a), 1507(a), 1509(b)(2)-(3), 1521(a), and 1525(a); and upon the Court's review and consideration of the Verified Petition; the Declaration of Mr. Pedreira, dated December 26, 2018; and the Declaration of Andre Pinto da Rocha Osorio Gondinho, an expert on Brazilian restructuring and bankruptcy law, dated December 26, 2018; and the Foreign Representative

---

[1]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Verified Petition.

having given notice by first class mail; and the Court having held a hearing and heard the arguments presented at the hearing held on _____, 201__; and based on the foregoing, the Court finds and concludes as follows:

1.     The Foreign Representative has demonstrated that:

   a.     the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b) and 11 U.S.C. § 1501;

   b.     venue is properly located in this District pursuant to 28 U.S.C. §§ 1410(a)(1) and (3);

   c.     this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P);

   d.     the Debtor is subject to foreign main proceedings within the meaning of Section 1502 of the Bankruptcy Code;

   e.     the Petitioner is a "person" and the Foreign Representative of the Debtor within the meaning of Section 101(24) of the Bankruptcy Code;

   f.     the above-captioned Chapter 15 case was properly commenced pursuant to sections 1504 and 1515 of the Bankruptcy Code;

   g.     the Debtor has its center of main interests and an establishment in Brazil; and

   h.     the Verified Petition satisfies the requirement of section 1515 of the Bankruptcy Code.

2.     The Foreign Representative has demonstrated that the relief requested is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States and warranted pursuant to section 1521 of the Bankruptcy Code; and

3.      The interest of the public will be served by this Court's granting the relief requested by the Foreign Representative.

NOW, THEREFORE, IT IS HEREBY

ORDERED, that the Verified Petition is granted, and the Brazilian Insolvency Proceeding is granted recognition as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code; and it is further

ORDERED that all relief afforded to a foreign main proceeding automatically upon recognition pursuant to section 1520 of the Bankruptcy Code is granted; and it is further

ORDERED, that the Petitioner is granted recognition as a "Foreign Representative" pursuant to section 101(24) of the Bankruptcy Code in respect of the Brazilian Insolvency Proceeding; and it is further

ORDERED, that the Petitioner is granted entrustment of the administration, realization and distribution of any and all of the Debtor's assets within the territorial jurisdiction of the United States pursuant to sections 1521(a)(5) and 1521(b) of the Bankruptcy Code; and it is further

ORDERED, that, to the extent not provided by section 1520 of the Bankruptcy Code, all creditors are enjoined from disposing of or otherwise taking any action against any property of the Debtor; and it is further

ORDERED, that, to the extent not provided by section 1520 of the Bankruptcy Code, all creditors are enjoined pursuant to section 1521 of the Bankruptcy Code from (1) disposing of or otherwise taking any action against any property of the Debtor; (2) taking or continuing any act to obtain possession of or exercise control over any property of the Debtor; and (3) commencing any suit, action or proceeding in the territorial jurisdiction of the United States to resolve any

dispute arising from the Brazilian Insolvency Proceeding or any orders issued by the Brazilian

Bankruptcy Court identified in the Verified Petition, or the Brazilian law relating thereto; and it

is further

ORDERED, that no creditors may take any action inconsistent with any orders issued in

the Brazilian Insolvency Proceeding identified in the Verified Petition; and it is further

ORDERED, that no action taken by the Petitioner in preparing, disseminating, applying

for, implementing or otherwise in connection with this Order, any order entered in respect of the

Verified Petition, this Chapter 15 Proceeding, any further order for additional relief in this

Chapter 15 Proceeding, or any adversary proceedings or contested matters in connection

therewith, constitutes a waiver of any immunity afforded to the Petitioner as Foreign

Representative, including without limitation pursuant to section 1510 of the Bankruptcy Code;

and it is further

ORDERED, that this Court shall retain jurisdiction with respect to the effect,

enforcement, amendment or modification of this Order, and it is further

ORDERED, that the Foreign Representative shall serve notice of this Order by email or

United States mail, first class postage prepaid, on or before _____, 20__, upon the known

creditors and entities upon which provisional relief had been sought; and it is further

ORDERED, that service in accordance with this Order shall be deemed good and

sufficient service and adequate notice for all purposes.

Dated: New York, New York
            _____, 20__


                                            _____
                                            United States Bankruptcy Judge